**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

*[stamp: UNITED STATES DISTRICT COURT FILED AUG 08 2017 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY]*

Revised 07/07 WDNY

_BETHANY BARRETT_

_____

**Jury Trial Demanded: Yes** ✓ **No** ____

Name(s) of Plaintiff or Plaintiffs

-vs-

_Greater Rochester Immediate Medical_
_Care, PLLC, d/b/a Rochester Immediate_
_Care AND CHRISTOPHER FAGAN_

Name of Defendant or Defendants

**DISCRIMINATION COMPLAINT**
-CV-
**17 CV 6542** D G L

You should attach a copy of your **original Equal Employment Opportunity Commission (EEOC) complaint**, a copy of the Equal Employment Opportunity Commission **decision, AND** a copy of the **"Right to Sue"** letter you received from the EEOC to this complaint. Failure to do so may delay your case.

***Note:*** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

✓ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race, color, gender, religion, national origin).
> **NOTE:** In order to bring suit in federal district court under Title VII, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

____ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).
> **NOTE:** In order to bring suit in federal district court under the Age Discrimination in Employment Act, you **must first file charges** with the Equal Employment Opportunity Commission.

____ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).
> **NOTE:** In order to bring suit in federal district court under the Americans with Disabilities Act, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub.L.No. 102-166, and any related claims under New York law.

**In addition to the federal claims indicated above**, you may wish to include New York State claims, pursuant to 28 U.S.C. § 1367(a).

✓

New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status).

## PARTIES

1. My address is:   4455 GREENLEAF MEADOWS
   ROCHESTER NY  14012

   My telephone number is:  585-259-9808

2. The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:

   Name:  GREATER ROCHESTER IMMEDIATE MEDICAL CARE PLLC, d/b/a
   ROCHESTER IMMEDIATE CARE

   Number of employees: _____

   Address:   1 JOHN JAMES Audubon PKWY
   BUFFALO, NY  14228

3. (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked. (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

   Name:  ROCHESTER IMMEDIATE CARE

   Address:   2745 W. RIDGE RD
   ROCHESTER, NY  14026

## CLAIMS

4. I was first employed by the defendant on (date):  AUGUST 21, 2015

5.  As nearly as possible, the date when the first alleged discriminatory act occurred is: _____
    MID TO LATE FEBRUARY 2016

6.  As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any
    did): MID TO LATE FEBRUARY 2016, MARCH 4, 2016, MARCH 5, 2016
    MARCH 7, 2016, MARCH 10, 11 2016, MARCH 28, 2016
    MARCH 30, 2016

7.  I believe that the defendant(s)

    a. ___/___   Are still committing these acts against me.
    b. ___✓___   Are not still committing these acts against me.
    (Complete this next item only if you checked "b" above)   The last discriminatory act
    against me occurred on (date) _____

    _____

8.  (Complete this section only if you filed a complaint with the New York State Division of
    Human Rights)

    The date when I filed a complaint with the New York State Division of Human Rights is
    APRIL 16, 2016
    _ (estimate the date, if necessary)

    I filed that complaint in (identify the city and state): ROCHESTER, NEW YORK.
    _____

    The Complaint Number was: 10180845   FEDERAL CHARGE # 16GB1002220

9.  The New York State Human Rights Commission did ___✓___ /did not _____
    issue a decision. (NOTE: If it did issue a decision, you must attach one copy of the
    decision to each copy of the complaint; failure to do so will delay the initiation of your
    case.)

10. The date (if necessary, estimate the date as accurately as possible) I filed charges with the
    Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged
    discriminatory conduct is: APRIL 16, 2016   DUAL FILED

11. The Equal Employment Opportunity Commission did ___✓___ /did not
    _____ issue a decision. (NOTE: If it did issue a decision, you must attach one
    copy of the decision to each copy of the complaint; failure to do so will delay the
    initiation of your case.)

12. The Equal Employment Opportunity Commission issued the attached Notice of Right to
    Sue letter which I received on: _____ MAY 12, 2017 _____. (NOTE: If it

3

**did** issue a Right to Sue letter, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

13.     I am complaining in this action of the following types of actions by the defendants:

   a. _____   Failure to provide me with reasonable accommodations to the application process

   b. _____   Failure to employ me

   c. ___✓___   Termination of my employment

   d. _____   Failure to promote me

   e. _____   Failure to provide me with reasonable accommodations so I can perform the essential functions of my job

   f. ___✓___   Harassment on the basis of my sex

   g. ___✓___   Harassment on the basis of unequal terms and conditions of my employment

   h. ___✓___   Retaliation because I complained about discrimination or harassment directed toward me

   i. _____   Retaliation because I complained about discrimination or harassment directed toward others

   j. _____   Other actions (please describe) _____
   _____
   _____

14.     Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

   a. _____ Race                          f. ___✓___ Sexual Harassment

   b. _____ Color                         g. _____ Age
                                              _____ Date of birth
   c. _____ Sex
                                              h. _____ Disability
   d. _____ Religion                      Are you incorrectly perceived as being
                                              disabled by your employer?
   e. _____ National Origin               _____ yes _____ no

15.     I believe that I was ___✓___ /was not _____ **intentionally** discriminated against by the defendant(s).

4

16. I believe that the defendant(s) is/are _____ is not/are not __✓__ still committing these acts against me. (If you answer is that the acts are not still being committed, state when: _____ and why the defendant(s) stopped committing these acts against you: __TERMINATED ON MARCH 30, 2016_____

17. **A copy of the charge to the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of my claim. (NOTE:** You **must** attach a copy of the **original complaint** you filed with the Equal Employment Opportunity Commission and a copy of the **Equal Employment Opportunity Commission affidavit** to this complaint; failure to do so will delay initiation of your case.)

18. The Equal Employment Opportunity Commission *(check one)*:
    __/__ **has not** issued a Right to sue letter
    __✓__ **has** issued a Right to sue letter, which I received on __May 12, 2017__

19. State here as briefly as possible the *facts* of your case. Describe how each defendant is involved, including *dates* and *places*. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. *(Use as much space as you need. Attach extra sheets if necessary.)*

IN OR ABOUT FEBRUARY 2016 I began a consensual personal relationship outside of work with cowerker christopher Pagan. During mid to late February 2016 MR. Pagan began to make unwanted & derogatory comments. For example, MR Pagan would call me a "bitch" "old bitch", "slut", "wore" and would make comments such as "who would want an old bitch like you, you're a fucking moron" on and/or about February 2016 I blocked MR. Pagan in my phone attempted to stop all communication with him. However, on and/or about March 4 I started receiving harassing messages from MR. Pagan via his facebook account

## FOR LITIGANTS ALLEGING AGE DISCRIMINATION

20. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct
    _____ 60 days or more have elapsed   _____ less than 60 days have elapsed

## FOR LITIGANTS ALLEGING AN AMERICANS WITH DISABILITIES ACT CLAIM

21. I first disclosed my disability to my employer (or my employer first became aware of my disability on _____

5

22.  The date on which I first asked my employer for reasonable accommodation of my disability is _____

_____

23.  The reasonable accommodations for my disability (if any) that my employer provided to me are: _____

_____

_____

_____

24.  The reasonable accommodation provided to me by my employer were _____/were not _____ effective.

**WHEREFORE**, I respectfully request this Court to grant me such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

Dated: 8/4/2017                    _____

Plaintiff's Signature

1.  Sexual Harassment/ Sex Discrimination

In or about February 2016 I began a consensual personal relationship outside of work with
Christopher Pagan. However, during mid to late February 2016 Mr. Pagan began to make unwanted
and derogatory comments to myself. For example, Mr. Pagan would call me a "bitch," "old bitch,"
"slut," "whore," and would make comments such as "who would want an old bitch like you, you're a
fucking moron." On or about February 28, 2016 I blocked Mr. Pagan from my phone and attempted
to stop all communication with him. However, on or about March 4, 2016 I began receiving
harassing messages from Mr. Pagan via his Facebook account. The following day, on or about March
5, 2016, Mr. Pagan began a confrontation with me, in the "med room," calling me a "fucking bitch"
and telling me "you're going to jail. " These interactions took place in areas of RIMC'S where
cameras were located. In addition several of my co-workers witnessed such interactions.

2.  Retaliation

On or about March 7, 2016 I made my Employer aware of the sexual harassment by Mr. Pagan, after
Webster site manager Joe Coluccelli let me know that he was aware of the relationship with Mr.
Pagan and he did not want to know anything about it. Quoted, "I don't want this shit here." At this
point I began to divulge the extent of Mr. Pagan's harassment, including the unwanted and
derogatory comments. I also informed Mr. Coluccelli and Site Manager Patricia Martin, about the
harassment occurring on March 5, 2016. Ms. Martin asked me to type something up which would be
reviewed by both her and Mr. Coluccelli. That night, I typed an email of the aforementioned
discrimination and sent it to Ms. Martin. I also contacted the employee compliance hotline and
reported such incidents. I did not receive a response from Ms. Martin until three (3) days later.
Approximately three (3) days later, on or about March 10, 2016 I was called into a meeting in Ms.
Martin's office. I received a write up, my first write up since being hired in August 2015, for
attendance, cell phone use, and violation of professional conduct X 2. I was not offered an
opportunity to write a rebuttal, and was told by Ms. Martin that if I did not sign the write up it could
be grounds for termination. Ms. Martin informed me that she had sent my email on to Emily
Hubbard, a Human Resources Representative for RIMC, who was on speaker phone during this
meeting. I repeated the aforementioned harassment and discrimination to Ms. Hubbard over the
phone, was told there would be an investigation, and provided Ms. Hubbard with names and
witnesses to specific events.

Subsequently, on or about March 11, 2016 I sent Ms., Hubbard an email regarding concerns I had
with my write up. I expressed to Ms. Hubbard that I felt the write up was in retaliation for my
complaint of sexual harassment by Mr. Pagan. Upon information and belief, I made Ms. Hubbard
aware a number of employees had "issues with improper cell phone use" and worse attendance
records than myself, however I was the only employee written up; written up only after reporting, in
good faith, sexual harassment by a co-worker. Upon information and belief, RIMC never performed
a thorough investigation of my report of sexual harassment. I was informed by co-workers, whom I

listed as witnesses to specific incidents of harassing conduct committed by Mr. Pagan, that they were never contacted or interviewed. Additionally, upon information and belief RIMC failed to have Ms. Hubbard review any security footage or audio of the incident on March 5, 2016. The only RIMC employee who performed any such investigation into my complaints was Mr. Coluccelli and Ms. Martin.

On or about March 28, 2016 I was contacted by Registered Nursed Suzanne Ciulla regarding missing bloodwork for a patient that I had recently worked with. I spoke with Physician's Assistant Claire Franz who recalled seeing me draw, label it, and place in the "bucket" to be sent out, all in accordance with RIMC policy. Upon information and belief, the night I alleged performed the missing bloodwork, the Registered Nurse responsible, Ms. Ciulla for placing such specimens from the "bucket" in the outdoor bin for pickup failed to lock such bin. Following this incident all RIMC employees were educated on making sure the bin was locked and the patient's information recorded in the "lab book."

On or about March 30, 2016, less than a month after my initial complaints of sexual harassment and first ever write up, I was terminated. Ms. Martin called me into her office; I was met by Mr. Coluccelli. I was informed by Ms. Martin that I was being terminated for not putting the missing blood work patient's name in the "lab book." However, upon information and belief number co-workers failed to write patient's names in the "lab book" and there were other missing patient specimens from such night and never disciplined. Additionally, upon information and belief the nurse responsible Ms. Ciulla for locking the outdoor bin on the night the bloodwork, other specimens went missing was never written up. I was the only RIMC employee written up for aforementioned conduct.

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

BETHANY BARRETT,

Complainant,

v.

ROCHESTER IMMEDIATE CARE, CHRISTOPHER
PAGAN,

Respondents.

AMENDMENT TO
THE COMPLAINT

Case No. 10180845

---

Federal Charge No. 16GB602220

Pursuant to the provisions of § 297.4a of the Human Rights Law (Executive Law, Article 15) of the State of New York, and the New York State Division of Human Rights, Rules of Practice § 465.4, the complaint in the aforesaid proceeding is amended as follows:

The respondent name shall be amended as follows: **Greater Rochester Immediate Medical Care PLLC, d/b/a Rochester Immediate Care; Christopher Pagan**

Dated: 5/9/2016 11:34:40 AM
Rochester, New York

STATE DIVISION OF HUMAN RIGHTS

By: _____

Julia B. Day
Regional Director

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

BETHANY BARRETT,

Complainant.

v.

ROCHESTER IMMEDIATE CARE, CHRISTOPHER
PAGAN,

Respondents.

VERIFIED COMPLAINT
Pursuant to Executive Law,
Article 15

Case No.
**10180845**

---

Federal Charge No. 16GB602220

I, Bethany Barrett, residing at 655 Greenleaf Meadows, Rochester, NY, 14612, charge the above named respondents, whose address is 2745 West Ridge Road, Rochester, NY, 14626 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of **sex, domestic violence victim status, opposed discrimination/retaliation.**

Date most recent or continuing discrimination took place is 3/31/2016.

The allegations are:

PLEASE SEE ATTACHED COMPLAINT FORM

# New York State Division of Human Rights
## Complaint Form

*JD*

## CONTACT INFORMATION

My contact information:

Name: Bethany Barrett

Address: 455 Greenleaf Meadows   Apt or Floor #

City: Rochester   State: NY   Zip: 14612

## REGULATED AREAS

I believe I was discriminated against in the area of:

☒ Employment   ☐ Education   ☐ Volunteer firefighting

☐ Apprentice Training   ☐ Boycotting/Blacklisting   ☐ Credit

☐ Public Accommodations
*(Restaurants, stores, hotels, movie theaters amusement parks, etc.)*   ☐ Housing   ☐ Labor Union, Employment Agencies

☐ Commercial Space   ☐ Internship

## I am filing a complaint against:

Company or Other Name: Rochester Immediate Care

Address: 2745 West Ridge Road

City: Rochester   State: NY   Zip: 14626

Telephone Number: 585 225 5757
(area code)

Individual people who discriminated against me:

Name: Trish Martin   Name: Joe Colucelli   Suzanne Ciulla RN Charge Nurse

Title: Manager   Title: Manager

Emily Hubbard   Christopher Pagan
HR rep   Medical Assistant

## DATE OF DISCRIMINATION

The most recent act of discrimination happened on:   3 month   30 day   2016 year

3

## BASIS OF DISCRIMINATION

*Please tell us why you were discriminated against by checking one or more of the boxes below.*



You do not need to provide information for every type of discrimination on this list. Before you check a box, make sure you are checking it only if you believe it was a reason for the discrimination. Please look at the list on Page 1 for an explanation of each type of discrimination.

**Please note:** Some types of discrimination on this list do not apply to all of the regulated areas listed on Page 3. (For example, Conviction Record applies only to Employment and Credit complaints, and Domestic Violence Victim Status is a basis only in Employment complaints). These exceptions are listed next to the types of discrimination below.

## I believe I was discriminated against because of my:

| | |
|---|---|
| ☐ **Age** *(Does not apply to Public Accommodations)*<br>Date of Birth: | ☐ **Genetic Predisposition** *(Employment only)*<br>Please specify: |
| ☐ **Arrest Record** *(Only for Employment, Licensing, and Credit)*<br>Please specify: | ☐ **Marital Status**<br>Please specify: |
| ☐ **Conviction Record** *(Employment and Credit only)*<br>Please specify: | ☐ **Military Status:**<br>Please specify: |
| ☐ **Creed / Religion**<br>Please specify: | ☐ **National Origin**<br>Please specify: |
| ☐ **Disability**<br>Please specify: | ☐ **Race/Color or Ethnicity**<br>Please specify: |
| ☐ **Pregnancy-Related Condition:**<br>Please specify: | ☒ **Sex**<br>Please specify: ☒ Female ☐ Male<br>☐ **Pregnancy**<br>☒ **Sexual Harassment** |
| ☒ **Domestic Violence Victim Status:**<br>*(Employment only)*<br>Please specify: | ☐ **Sexual Orientation**<br>Please specify: |
| ☐ **Familial Status** *(Does not apply to Public Accommodations or Education)*<br>Please specify: | ☒ **Retaliation** *(if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above)*<br>Please specify: |

Before you turn to the next page, please check this list to make sure that you provided information *only* for the type of discrimination that relates to your complaint.

5

# EMPLOYMENT OR INTERNSHIP DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of employment or internship. If not, turn to the next page.*

**How many employees does this company have?**
a) 1-3        b) 4-14        c) 15 or more        d) 20 or more        e) Don't know

**Are you currently working for the company?**

☐ Yes

Date of hire:     (_____  _____  _____)     What is your job title? _____
                         Month              day            year

☒ No

Last day of work:   ( 03        30        2016 )     What was your job title? Licensed Practical
                         Month       day       year                                                Nurse

☐ I was not hired by the company

Date of application: (_____  _____  _____)
                              Month            day           year

## ACTS OF DISCRIMINATION

**What did the person/company you are complaining against do? Please check all that apply.**

☐ Refused to hire me

☒ Fired me / laid me off

☐ Did not call me back after a lay-off

☐ Demoted me

☐ Suspended me

☒ Sexually harassed me

☒ Harassed or intimidated me (other than sexual harassment)

☐ Denied me training

☐ Denied me a promotion or pay raise

☐ Denied me leave time or other benefits

☐ Paid me a lower salary than other workers in my same title

☐ Gave me different or worse job duties than other workers in my same title

☐ Denied me an accommodation for my disability

☐ Denied me an accommodation for my religious practices

☒ Gave me a disciplinary notice or negative performance evaluation

☒ Other: Denied extra hours, overtime pay.

6

**DESCRIPTION OF DISCRIMINATION** - for <u>all complaints</u> *(Public Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)*

*Please tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory.*
**PLEASE TYPE OR PRINT CLEARLY.**

See attached.

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form. **PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.***

8

February 2016- In the beginning of the month I began a personal relationship outside of work with co-worker Christopher Pagan. Chris became very abrasive in how he acted towards me. Chris was very controlling, when he did not get his way he would lash out at me verbally. Numerous times calling me a bitch, old bitch, slut, whore, and making comment's "who would want an old bitch like you, you're a fucking Moran." Shortly after this behavior from Chris I would receive a message/phone call with some form of apology. Chris would also send revealing pictures of himself that were unwanted, not asked for. On two separate occasions I was out with friends, Chris would call if I was not home when he expected me to be. The messages Chris would text; things he would describe while I was out made me very uncomfortable to return home alone. The messages I received when out with friends were "you didn't drive? maybe you should have left your front light on if you planned on coming home so late." I never gave Chris any information about my plans just that I was with friends. I felt as if Chris was in my parking lot watching me or drove to my complex to check up on me. I made my friend's that I was out with aware of Chris's comments, they drove around the parking lot before dropping me off, made sure I was safely home inside. After only a few weeks of communication, two invites to dinner at my home I ended any personal relations I had with Chris. On one occasion at my home Chris grabbed both of my arms and shook me, as I tried to get away his head banged into my lip leaving me with a bruised upper lip. Chris did not take me ending things very well. He began calling, texting me constantly, the verbal harassment became worse.

On February 28, 2016 I blocked Chris from my phone. I was then told by co-worker Danielle Edwards about incidents that occurred between Chris and another woman at a prior job Danielle worked with Chris. At this job Danielle was Chris's manager. Chris had the same abrasive behavior, aggressive approach. Danielle explained things became worse; there was abuse, made up accusations against the woman, finally a restraining order and criminal charges brought against Chris. I knew at this time I made the right decision breaking all contact off with Chris.

March 4, 2016- I started receiving harassing messages from Chris Pagan via a Facebook messenger account. Also, I was concerned how Chris found my account due to it not being under my name but an alias. Chris began to message me that he was going to put me in jail, call the cops on me due to his tires to his car were flattened. Chris kept messaging "just admit it, are you going to admit it, I know it was you, old fuckin bitch." As Chris's messages went on, they read more chaotic. Chris now adding his windshield was now broken, there were charges against me but I should admit wrong doing, there were cameras watching me on his property. I originally was by myself on his property, and then there were witnesses that saw me on his property with numerous individuals. Each time I told Chris to "leave me alone." Not knowing how to block Chris from this messenger account I stopped responding to Chris who continued to message me. Since Chris did not get any other response from me he then started contacting my co-worker Danielle Edwards. Danielle never responded, made me aware of the same threats, chaotic behavior from Chris.

March 5, 2016- Chris Pagan and I had to work a shift together at Immediate Care. I acted very professional towards Chris but had little to no involvement with him.

Danielle Edwards was the charge nurse during this shift which made me a little less uneasy working with Chris. A few hours into the shift all changed, Chris became out of control. Chris first walked by me while I was entering patient information and stated "you're going to jail Bitch, the cops are coming to 655 Greenleaf meadow's", which is my residence. Chris continued to make rude comments and threats, as I tried to get away from him he would follow me through the facility continuing with calling me an "old bitch, I better fucking admit what I did, or else." Chris continued to threaten me with jail. I got up to get away from Chris and walked to the front reception area. Chris followed, cornered me in behind the front desk area. He began to make harassing comments in front of patients and staff. Staff member Ru-Jun Lynch Miller heard the things Chris was stating to me. I was asking him to get away from me, stop acting like this at work, and to leave me alone. I got around Chris somehow and immediately walked towards the medication room; I knew Chris had no access to this room. When I swiped to enter Chris was only a few steps behind. Chris stopped the door from closing with his body and now was standing in between the door so it wouldn't shut. Chris continued to stand in the doorway making threats, harassing me. Stating the same thing's as I stated above but over and over. Chris now stating "I admitted being on his property, I was fucking going down, he can't wait until they come to 655 Greenleaf meadows." I was standing against the counter in the med room, Chris inches from me. Chris backed into the hallway and I was able to push the door shut. I immediately texted charge nurse Danielle Edwards to come to the medication room asap. Chris continued to pace in the hall in front of the med room door. Seeing Chris finally walking away I left the med room and rushed up to the front reception hoping I would find Danielle, feeling safer around people. Danielle finally found me in the front reception area, saw how upset I was, I explained why. Danielle stated Chris was acting really wired, "jumpy, and erratic" and he asked to leave work immediately. Chris left a few hours before the shift was over.

I continued to work my scheduled shift. I was still receiving harassing messages from Chris who was now possibly gone from work. Not feeling safe I called my X-boyfriend who is a Rochester Police Officer, on duty he came to Immediate Care at the end of my shift to escort me to my vehicle and follow me home. At that time my X-boyfriend responded back to Chris via messenger and stated Chris would soon be advised to stay away from me and to leave me alone. At this time the messenger account was deactivated.

March 6, 2016- Chris Pagan was a no call no show for his shift at Greece Immediate Care.

March 7, 2016- I was pulled into the office by manager Trish Martin (Greece) and manager Joe Coluccelli (Webster) about a disagreement a nurse Suzanne Ciulla, myself had weeks prior. At such meeting Suzanne was not truthful with the events, I stated that to both managers. We did resolve the disagreement finally, at the end of the discussion Trish states "well should you two hug it out now". I was told by Trish she was glad this was resolved.

As I got up to leave the room I was asked to stay due to Joe and Trish needed to speak to me about something else. At this time Joe stated that earlier that morning while in

Webster he was approached by Chris Pagan who was working at the Webster location. Joe stated he was made aware by Chris that we were involved in a relationship outside of work and it went bad. Joe continued to state that he did not care what happened outside of work, did not want to hear anything from me in regards to it, did not want any of it brought to work. Joe went on to state that if any such things were brought to work I would be disciplined. I told Joe I had no contact with Chris, Joe cut me off stating "I don't need to know what happened, I don't want it brought here." Joe also continued to state "in my 5 years here at immediate care I never had anything like this happen." Now having a chance to speak I asked if Chris made him aware of what took place a few days prior on March 5 while Chris was working in Greece. Joe stated Chris did not make him aware of any of his harassing, threatening behavior. I explained all the events in detail from that day to both Joe and Trish. I also made them completely aware I felt unsafe working any shifts with Chris now, had two scheduled in the next few days. I gave the names of the witnesses who saw / heard Chris's erratic behavior. I was then told by both Joe and Trish that I had to work with Chris, my shift could not be changed. I stated that I wanted such incident on record and their response to my request, feeling unsafe documented as well. I was told that I could write something up and they would review it.

This same day they did pull Danielle Edwards into the office to speak to her about what she witnessed on March 5. Danielle states she made them aware of Chris's behavior, saw him standing in the doorway so the med room door would not shut. She states she explained his "jumpy" behavior, leaving before his shift was over. She also told them of the harassing messages she received from Chris trying to get Danielle to contact me for him. Danielle states she made Joe and Trish aware prior to working at immediate care Danielle was Chris's manager at one of the local hospitals. She told them of how Chris's actions were the same he displayed now at immediate care, such actions excelled to abuse, a restraining order and criminal charges brought against him by a nurse at this hospital. Danielle was told by Trish and Joe "if anything happens we are to be called at home" when Bethany and Chris work together.

That night while at work I typed an email of the events and sent it to my manager Trish Martin before the end of my shift. When I returned home that evening I also called the Immediate Care compliance hotline gave my name, stated the chain of events from March 5, 2016. I also reported manager's Joe and Trish comments after making it clear I felt unsafe working with Chris Pagan.

I did not receive any response from Trish the next two days. My next shift scheduled to work was March 9, 2016. I called in using PTO due to having to work with Chris this shift. At such time, with no response from Trish, I was under the impression from the statement's Joe and Trish made to myself and charge nurse Danielle Edwards I had no choice, had to work with Chris. I did not feel safe; they were well aware of this.

March 10, 2016- I was pulled in the office by Trish, at this time she had an HR representative named Emily Hubbard on speaker phone which I found out later was out of a Tennessee office. At that time I was presented with a formal written write up stating I was being written up for attendance, cell phone use, violation of professional

Conduct x 2. The disagreement with Suzanne which happened weeks prior, I was under the impression resolved 3 days earlier was now a professional conduct write up x 2. I stated at this time I did not agree with such written write up, I did not want to sign. I was told by Trish, Emily if I did not sign, it could be grounds for termination. I asked if there was space for me to write a rebuttal that I disagreed with such write-up and the chain of events. I was told by Trish, and she pointed on the paper "you can fit it in somewhere on the paper". I made it known I did not agree with such write up but, I needed my job, I wrote in a small space my disagreement.

After the paper was signed I was told by Trish that my email pertaining to the situation with Chris was forwarded to Emily. Emily at this time asked me to repeat the events from March 5, I did. I was then told by Emily they take this very seriously, it would be under investigation. I was asked to give witnesses, which I did. RN Danielle Edwards and the PSR working in the front reception area that being Ru-Jan Lynch Miller which I did not know her name at the time but described her to Trish. I was told that the video from the cameras in the facility would be reviewed. I was then told they would be in touch with me pending the investigation.

I told Trish I was never made aware that Chris and I couldn't work together and she stated "oh communication error, I was sure I told you."

March 11, 2016- I sent an email to Emily Hubbard (HR rep) with concerns that I was written up only after I reported the Chris situation, felt that it was unfair. I also stated I was never made aware of such write up during the meeting on March 7, 2016, I was under the impression the matter was resolved. I also stated there were numerous employees with worse attendance issues, everyone used a cell phone in the facility, yet never written up. I explained on numerous occasions Trish displayed favoritism, there were witnesses, examples of such. Emily responded via email that HR was made aware well in advance of my violations, it was under her suggestion I be written up. I asked for a copy of an employee handbook which no employee received at time of hire, any information on company policy pertaining to disciplinary action/ appealing also, information on work place harassment. At this time, I made Emily aware of the PSR Ru- Jan Lynch Miller who was in the front reception that saw and heard what Chris was stating to me on March 5.

I was later told by Ru-Jan; Emily never contacted or interviewed her about this incident. I was also told in Emilie's email response that the security footage was being reviewed. Later I found out it was reviewed by Trish and another employee a medical assistant named Chris Consadine.

Chris Pagan was still allowed to work at the Greece location as a per-diem employee where I was hired for fulltime. I was unable to pick up overtime shifts due to Chris still being scheduled.

March 14, 2016- I received an email from Emily asking if I be willing to snapshoot the messages Chris was sending on March 4, March 5, 2016. I responded back by sending all the messages pertaining to those two days.

March 16, 2016- I received an email from Emily asking me to clarify the messages. I did not understand due to it was self-explanatory which ones were from Chris (his picture next to each message) I emailed back explaining which ones were sent from Chris; which ones were my response.

March 28, 2016- I received a text message from RN Suzanne Ciulla in regards to a patient's blood work was missing from a day I recently worked, the patient was calling numerous times for the results. I was unable to call Suzanne immediately back due to being in class. About an hour later I received another message now from LPN Sori Caruso stating could I call the Greece facility, she was contacting me for Suzanne again. When I responded Suzanne stated that the lab had no recollection of the blood, could not find it. Suzanne also stated that the patients name was never written in the lab book to be sent. I did not recall the patient at the time of Suzanne's phone call. Suzanne stated that the patient was calling every hour and "this is just something she does not want to deal with, the patient is annoying." I told Suzanne I was going to call the provider; maybe she would recall the patient. After speaking with Physician Assistant Claire Franz I was able to recall the patient, Claire was sure I sent the blood due to seeing me draw the blood, labeling and obviously placing in bucket to be sent. Claire also stated she knew I sent it due to we both signed off on it in the patient chart. Claire stated the patient was not going to have a medical complication of a stroke due to the blood being lost by the lab. This is what I was told by Suzanne during our phone conversation.

Claire stated we should ask the patient to come back in, no charge, and have the blood re-drawn, which happens many times at immediate care. I called Suzanne immediately after speaking to Claire, Suzanne never answered her page after having the front PSR page her twice. I texted Suzanne exactly what Claire stated, also forwarded the text to Sori Caruso. I also stated in the text Claire said to call her if any clarification was needed about the blood being sent. A while later I received a text from Suzanne stating "ok".

March 30, 2016- I arrived to work, was approached by Trish to hurry and fix a few charts due to billing issues. I was approached by Trish 3x with in a 20-minute window, while I was attending to patients due to my shift had started. I asked to speak to her, not paying much attention to me I stated that I would like some information about the investigation, that I have complied with what I was written up for but yet everyone around me is violating rules, no one is getting disciplined like I had. Trish stated "I really don't have the time right now to discuss this with you, maybe a little later." I returned to the patient area and began rooming and triaging patients. No more than 30 minutes later I was told by Suzanne, Trish would like to see me in her office. When I went to Trish's office Joe was in there and I was told a representative from HR was on the phone. I was then told by Trish due to me not putting the patients name in the lab book I was being terminated at this time. She also stated it was due to my prior written violations. I was told to hand over my I.D and Joe was going to walk me to collect my belongings. I was not allowed to ask any questions or explain the situation. I was told I had to leave the facility. I was walked by Joe to collect my belongings, then to the exit. I asked to punch out, was not allowed to by Joe stating, "don't worry about that."

March 31, 2016- Danielle Edwards went to the employee meeting where it was stated numerous labs sent to the ACM lab were also missing from the day I was told I did not send blood samples. ACM had stated they could not find, later sending the final results r on the labs they "couldn't find". Danielle Edwards stating it was Suzanne who was made aware the labs were found by ACM.

On March 29, 2016 manager Trish Martin sent out an employee email educating, reviewing staff about "send out labs" this same day co-worker LPN Kristin Haacker was spoken to by Trish for not putting patient's name in our lab book, was not terminated from her position.

On March 30, 2016 only 30 minutes after I was terminated I received text messages and emails from co-workers from other Immediate Care sites that they just heard I was no longer working at Immediate Care, Trish made an announcement to the staff after I was escorted by Joe from the building. I was also made aware Chris Pagan still works for Immediate Care, has been assigned by Trish and Joe many of my shifts I was previously scheduled.

for Thany Saiutti
4/4/2016

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing),as applicable This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief

_____
Sign your full legal name

WANDA STICKES
Commissioner of Deeds
Monroe County, New York State
My Commission Expires June 30, 20#17

Subscribed and sworn before me
This 6'th day of ).  , 20 /'.'

_____
Signature of Notary Public

County:                    Commission expires:


*Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.*

# NEW YORK STATE

# DIVISION OF HUMAN RIGHTS

TO:     Files                                          REGION: Rochester

FROM:  Julia B. Day                                  DATE: September 13, 2016
         Regional Director

SDHR CASE NO: 10180845-16-E-SOB-E

Federal Charge No. 16GB602220

SUBJECT:   Bethany Barrett v. Greater Rochester Immediate Medical Care PLLC, d/b/a
            Rochester Immediate Care, Christopher Pagan

---

### FINAL INVESTIGATION REPORT AND BASIS OF DETERMINATION

## I.     CASE SUMMARY

This is a verified complaint, filed by complainant, Bethany Barrett, on Wed 4/6/2016.
The complainant who is female and alleges that she is a victim of domestic violence and
maintains that she was subjected to retaliation for opposing discrimination, charges the
respondents with unlawful discriminatory practices in relation to employment because of sex,
domestic violence victim status, opposed discrimination/retaliation.

## II.    SUMMARY OF INVESTIGATION

Complainant's Position:

Complainant states that she developed a personal relationship with Respondent Christopher
Pagan, who was a coworker at the time. Complainant asserts that when the relationship ended,
she felt unsafe working with Respondent Pagan because he made sexual comments and engaged
in inappropriate behavior towards her. Complainant says that on March 5, 2016, Respondent
Pagan became aggressive and threatening towards her at the workplace.  Complainant states that
on March 7, 2016, she met with her managers about an unrelated incident. Complainant alleges
that during the meeting, the managers brought up her relationship with Christopher Pagan.
Complainant states that despite telling them what occurred with Respondent Pagan and
informing them that she felt unsafe, her managers told her that she would have to work with Mr.
Pagan.  Complainant says that on March 10, 2016, she was given a formal write-up for
attendance, cell phone use, and violating professional conduct. Complainant states that she let
her manager and a Human Resources Representative know that she felt harassed and that she felt
that she was written up only after she reported the situation with Christopher Pagan.
Complainant says that after an internal investigation of her complaint, no harassment was found.

Complainant alleges that the investigation was limited in its scope and that her witnesses were not interviewed. Complainant states that on March 30, 2016, her employment was terminated because she did not put a patient's name in the lab book and because of her prior written warnings. Complainant alleges that others have committed similar or worse infractions and were not targeted. Complainant further asserts that Respondent Pagan remained employed by Respondent and has been assigned to many of the shifts that she previously worked.

## Respondent's Position:

Respondent Greater Rochester Immediate Medical Care PLLC (hereafter "RIMC") denies discriminating against Complainant. Respondent RIMC states that Christopher Pagan never engaged in any inappropriate or harassing conduct towards Complainant or made any inappropriate comments due to her sex. Respondent RIMC asserts that Complainant had significant behavioral and performance issues prior to making any complaint about Christopher Pagan; according to Respondent RIMC, Complainant tried to use its internal complaint system as a shield from discipline and as a weapon against Christopher Pagan after he ended their consensual relationship. Respondent RIMC says that it conducted a full internal investigation into Complainant's allegations against Christopher Pagan, including speaking to employees and reviewing security video footage, but did not corroborate her allegations. Respondent RIMC says that the recommended action was to make sure that Complainant and Christopher Pagan never worked together again. Respondent RIMC states that Complainant received numerous warnings and write-ups, including a Performance Improvement Plan issued March 10, 2016, but the problems persisted. Respondent RIMC states that the final infraction that resulted in Complainant's employment termination was Complainant's admitted failure to log a patient's blood sample that never arrived for testing, which exposed the company to liability. Respondent RIMC states that since the March 10, 2016 Performance Improvement Plan was Complainant's final warning, the decision was made to terminate Complainant's employment after her failure to log a patient's blood sample resulted in the loss of the sample and the patient having to undergo an invasive procedure to confirm their diagnosis. Respondent says that Complainant was informed of the termination decision on March 30, 2016.

Respondent Christopher Pagan states that he joins and fully incorporates the response by Respondent RIMC. Respondent Pagan states that he never discriminated against Complainant and denies all of her allegations of wrongdoing, including harassment and discrimination. Respondent Pagan states that according to the Human Rights Law, he cannot be held individually liable.

## Investigator's Observations:

Investigation showed that Complainant was hired by Respondent as an LPN on August 21, 2015.

Investigation showed that on January 26, 2016, a supervisor documented concerns with Complainant's attendance and cell phone use at work. (*See*, Respondent RIMC's response, exhibits N, O and P). However, there was no documented formal counseling at that time.

The parties agree that on March 7, 2016, Complainant informed her supervisors of her concerns with Respondent Pagan. While Respondent RIMC characterizes Complainant's complaint as "an interpersonal issue she had with a co-worker, unrelated to any actual discrimination" (*see*, Respondent RIMC's response, page 15), Complainant maintains that she reported sexual harassment and threats by Respondent Pagan. Respondent RIMC also maintains that since Complainant's complaint occurred after she was counseled for performance issues, Complainant used her complaints as a shield against discipline; however, whether or not Complainant's complaint was a good faith complaint of discrimination is a factual issue to be resolved by an Administrative Law Judge at public hearing.

The documents show that on March 9, 2016, Complainant asked her supervisor if her recent email sent to her supervisor regarding not feeling safe working with Respondent Pagan was sent to the corporate office. (*See*, Respondent RIMC's response, exhibit Q).

Investigation showed that on March 10, 2016, Complainant was issued a Performance Improvement Plan. Although Respondent RIMC deems that this was a final warning, the language on the Performance Improvement Plan indicates that further infractions may result in further disciplinary action, up to and including termination. (*See*, Respondent RIMC's response, Exhibit R).

Respondent RIMC maintains that it conducted a thorough investigation into Complainant's allegations of harassment, but none of the witnesses supported that the coworker engaged in inappropriate behavior towards Complainant. Respondent RIMC also says that while the security footage showed Complainant and Respondent Pagan speaking, nobody else in the area reported the interaction as notable in any way. The outcome of the investigation was that Complainant and Respondent Pagan would not be scheduled to work together in the future. (*See*, Respondent RIMC's response, Exhibit V). However, Complainant asserts that she had to work with Respondent Pagan even after her complaint.

Investigation showed that on March 29, 2016, Complainant was accused of not logging a sample in a log book, which resulted in the loss of the sample and the patient having to undergo a more extensive procedure to confirm the diagnosis. (*See*, Respondent's response, Exhibit X). On March 30, 2016, Complainant's employment was terminated for this infraction since she was already on a Performance Improvement Plan. (*See*, Respondent RIMC's response, Exhibit Y). Complainant contends that others made similar mistakes but were not disciplined.

Submitted by: _____
Jami Kaplan
Human Rights Specialist II

## III.    BASIS FOR DETERMINATION

The parties dispute whether or not Complainant was sexually harassed by her coworker, Respondent Christopher Pagan, after their consensual relationship ended. According to

Respondents, Complainant was the one who harassed Respondent Pagan. Investigation showed that on March 7, 2016, Complainant complained internally about alleged harassment by Respondent Pagan. The parties also dispute whether or not Respondent RIMC conducted a thorough investigation into her complaint; while Respondent maintains that it spoke to employees who were present at the time of the alleged harassment, Complainant asserts that coworkers reported to her that they were never interviewed. Although there was one email expressing some concerns with Complainant's performance prior to her complaint, there was no evidence of any disciplinary action taken against Complainant. Three days after Complainant's internal complaint, Complainant was issued her first documented discipline in the form of a Performance Improvement Plan; on March 30, 2016, Complainant's employment was terminated after Respondent deemed that she failed to log a sample into the log book. Thus, there is temporal proximity between Complainant's internal complaint and her placement on a Performance Improvement Plan, as well as between her internal complaint and her employment termination. While Respondent is entitled to discipline an employee for legitimate, non-discriminatory business reasons after an employee complains of discrimination, the short period of time between the complaint and Complainant's dismissal, with no prior documented discipline, suggests an inference of discrimination in this case. Additionally, the short period of time between Complainant's internal complaint, disciplinary action and termination may have a chilling effect on other employees' willingness to bring forth their own discrimination complaints. There are issues of material fact remaining, including but not limited to, whether Complainant was subjected to conduct due to her sex that was so severe or pervasive so as to alter the terms and conditions of her employment; whether Complainant also engaged in the behavior she complains of; whether Complainant was a victim of domestic violence as defined by the NYS Human Rights Law; whether Respondent took prompt and effective action to resolve Complainant's internal complaint; whether Complainant's internal complaint was a factor in her Performance Improvement Plan and/or employment termination; and the liability, if any, of either or both Respondents. These issues of material fact are best resolved in the context of a full public hearing, where there is sworn testimony and the opportunity for cross-examination. Therefore, there is probable cause to support the allegations of the complaint.

Reviewed & Approved: 

Jami Kaplan
Human Rights Specialist II

## IV.   DETERMINATION

Based on the foregoing, I find Probable Cause to support the allegations of the complaint.

Julia B. Day
Regional Director



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

BETHANY BARRETT,

Complainant,

v.

GREATER ROCHESTER IMMEDIATE MEDICAL
CARE PLLC, D/B/A ROCHESTER IMMEDIATE
CARE, CHRISTOPHER PAGAN,

Respondents.

DETERMINATION AFTER
INVESTIGATION

Case No.
10180845

---

Federal Charge No. 16GB602220

On 4/6/2016, Bethany Barrett filed a verified complaint with the New York State
Division of Human Rights ("Division"), charging the above-named Respondents with an
unlawful discriminatory practice relating to employment because of sex, domestic violence
victim status, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 ("Human
Rights Law").

After investigation, the Division has determined that it has jurisdiction in this matter and
that PROBABLE CAUSE exists to believe that the Respondents have engaged in or are engaging
in the unlawful discriminatory practice complained of.

Pursuant to the Human Rights Law, this matter is recommended for public hearing. The parties will be advised of further proceedings.

Dated:      SEP 1 5 2016

Rochester, New York

STATE DIVISION OF HUMAN RIGHTS

By: _Julia B Day._

Julia B. Day

Regional Director

## Information to the Parties
## Following Determination of Probable Cause

The New York State Division of Human Rights ("Division") is the administrative agency charged with enforcing the New York State Human Rights Law.  The Division investigates complaints of discrimination, determines whether there is probable cause to believe that discrimination has occurred, and conducts a public hearing of the complaint where probable cause is found.  Probable cause has been found in this case, and the matter will now proceed to a public hearing before an Administrative Law Judge.

If a Complainant does not have a private attorney, the Division will  assign an attorney to present the case in support of the complaint.  The Division attorney at all times represents the Division, not the Complainant personally.  Substitutions and reassignments of Division attorneys and Administrative Law Judges are within the Division's discretion.

The Division generally schedules public hearings for two consecutive days, which may be allocated with one day each for the presentation of Complainant's and Respondent's cases.  There is no formal discovery.  Parties may exchange document and witness lists at the preliminary conference, which will take place during the first hour of the first day of the public hearing.

Prior to receiving the notice setting out the date and time of the public hearing, parties may receive notice of a Pre-Hearing Settlement Conference, which will be scheduled several weeks before the public hearing.  If Respondent wishes to make an offer of settlement prior to that time, Respondent should contact the Division at question@dhr.ny.gov.  If you do not have access to electronic mail, you may call the Hearing Attorneys Unit at (718) 741-8398.

The Division has its own Rules of Practice which can be found on the Division's website, www.dhr.ny.gov.  The New York Civil Practice Law and Rules and the Federal Rules of Procedure and Evidence are inapplicable to Division proceedings.  Please cite to New York State case law wherever possible in all submissions to the Division.

The parties have a continuing obligation to keep the Division advised as to any changes in the case including:

1.    Changes in name, address and/or telephone number of the parties and successors in interest.

2.    Commencement of proceedings in another forum.

3.    Settlement of the case.

Any of the above information should be timely provided to the Division, IN WRITING on the attached form to the following by mail or fax:

**New York State Division of Human Rights**
**Attn: Chief Calendar Clerk**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-8273**

If the Complainant wishes to seek dismissal of this matter to proceed in an alternate forum, an application should be filed with the Chief Calendar Clerk at the above listed address, preferably within twenty (20) days of the date of this determination.

The parties also have a continuing obligation to maintain certain information, records, etc., as follows:

1.  Parties must keep track of the whereabouts of their witnesses.

2.  Parties are obligated to identify and preserve all evidence relating to the case, including evidence relating to any incidents which relate to the case that occur after the Division makes a finding of probable cause, and including all evidence whether for or against that party's interests.

3.  Parties are responsible for recording and keeping evidence relating to any increase or reduction in damages.

Finally, if you would like to request a copy of the investigation file, please do so promptly. Put your request in writing to:

**New York State Division of Human Rights**
**Attn: FOIL Officer**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-3217**
**Email: foil@dhr.ny.gov**

Please note that your request for documents, or the Division's response or date of response thereto, will not affect the date of the hearing, and cannot be used to request a postponement or rescheduling of the hearing. Costs for copying, established by statute, will apply.

## FREQUENTLY ASKED QUESTIONS

The New York State Human Rights Law and the Division's Rules of Practice outline the policies and procedures that govern hearings administered by the New York State Division of Human Rights. The Law and the Rules are available on the Division's website at www.dhr.ny.gov. Parties may consult with their own attorneys on questions about and interpretations of the Law and/or the Rules. The following are general responses to frequently asked questions. The responses are not legal advice, and should be used for informational purposes only.

## Before the Public Hearing

1. **I recently received a "Determination After Investigation" letter from the Division, stating that there is probable cause to believe that discrimination has occurred in my case and that the case will be scheduled for a public hearing.  What does this mean and when will the case be scheduled for a hearing?**

    Where the Division finds probable cause after investigation, the Human Rights Law requires that the entire case be heard at a public hearing before an administrative law judge, where all relevant evidence is presented and the testimony of witnesses is taken under oath and subject to cross-examination.  You will receive written notice from the Division of the hearing date, time, and location of the hearing. The hearing usually is scheduled to occur 4 to 6 weeks from the date of the written notice.  Prior to receiving this notice, you may receive notice of a Pre-Hearing Settlement Conference, where your case will come before an Administrative Law Judge for the purpose of exploring settlement.

2. **Do we pick the dates for the hearing?**

    No.  The Division selects dates for a public hearing, and notifies the parties in writing through the notice of hearing.

3. **What do I bring to the hearing, such as documents, witnesses, etc.?**

    The parties should identify and bring all documents and witnesses relevant to their claims and/or defenses.  The parties should review the notice of hearing, which is issued via mail.

4. **Now that the case is scheduled for a hearing, what happens next?**

    The case proceeds to a public hearing on the scheduled date.  The Complainant may consult with his or her own attorney.  If Complainant does not have an attorney, please wait to be contacted by a Division attorney, who will present the case in support of the complaint. Further, the parties should review the notice of hearing, which is issued via mail.

5. **When should an answer be filed and can it be faxed?**

    An answer should be served by the respondent(s) on all parties and the Administrative Law Judge at least two (2) business days before the public hearing.  This is a statutory requirement. All formal papers, including but not limited to the answer, must be submitted via personal service, mail, or fax (with an original to follow) for proper docketing and timely filing.  Formal papers submitted via electronic mail are deemed courtesy copies and do not constitute proper service.

## Adjournments

6.   **What should I do if I have a conflict with the hearing date that is scheduled?**

You should submit, as early as possible, a written request for an adjournment of the hearing, stating the basis for your request, to all parties and the Administrative Law Judge.

7.   **On what basis will the judge grant an adjournment? Will I receive a letter with new dates?**

Adjournment of a public hearing is granted only for actual engagement before a higher tribunal on the specific dates of the public hearing, or for other good cause shown as determined by the Division. If a case is adjourned, the Division will schedule a new hearing date.

## Public Hearing

8.   **What happens if I do not appear for the hearing?**

A complainant's failure to appear at a public hearing may result in a dismissal of a complaint, and a respondent's failure to appear may result in a default finding against a respondent.

9.   **How long is the hearing?**

Public hearings are generally scheduled for two (2) days.

10.   **Can I speak with the Judge?**

*Ex parte* communication (*i.e.*, by only one party) with the judge assigned to the case is strictly prohibited. The parties may jointly request a conference with a judge through the Office of Administrative Law Judges.

## Additional Information

11.   **I have more questions. Where can I call for more information?**

If necessary, you may call Shirese Taylor, Chief Calendar Clerk, at (718) 741-8400. We do request that you call only if the situation is urgent. Please do not call to ask the status of your case; the Division will contact *you* at the appropriate time. Frequent telephone contact can interfere with the prompt processing of your hearing. Please do not call your regional office; they will not have information on the hearing process.

## IF YOU MOVE, SETTLE, OR INTEND TO CHANGE FORUM
### Complete and return this form to:

New York State Division of Human Rights
Attn: Chief Calendar Clerk
One Fordham Plaza, 4th Floor
Bronx, New York 10458
Fax: (718) 741-8273

Re:     Bethany Barrett v. Greater Rochester Immediate Medical Care PLLC, d/b/a Rochester
Immediate Care, Christopher Pagan
Case No. 10180845

**New name, address, and/or telephone:**

NAME: _____

ADDRESS: _____

_____

TELEPHONE: _____

I WILL BE AT MY NEW ADDRESS ON OR AFTER: _____

Please indicate below the name, address, and telephone number of a person who may be
contacted and will know your whereabouts if the Division cannot locate you:

_____

_____

_____

**Commencement of proceedings in another forum, or settlement:**
Below please indicate, for other proceedings, the name of the forum and the name, address, and
telephone number of the attorney handling the matter. For settlement, please explain briefly the
circumstances under which the case was settled, and whether the terms have been complied with,
and give a contact telephone number and sign below.

_____

_____

_____

_____     _____
Telephone Number                      Signature

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Bethany Barrett**<br>**655 Greenleaf Meadows**<br>**Rochester, NY 14612** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2016-02220** | **Holly M. Woodyard,**<br>**State & Local Program Manager** | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other *(briefly state)*      **Charging party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____      May 12, 2017

| Enclosures(s) | **Kevin J. Berry,**<br>**District Director** | *(Date Mailed)* |
|---|---|---|

cc:

**Martin W. Aron, Esq.**

**Attn: Joseph DiVincenzo, Counsel**
**GREATER ROCHESTER IMMEDIATE MEDICAL**
**1 John James Audubon Pkwy**
**Buffalo, NY 14228**

**Robert Novack, Esq.**

**Christopher Pagan**

**Luke B. Kalamas, Esq.**
**LaDuca Law Firm**
**125 State Street, Suite 400**
**Rochester, NY 14614**